This is an action for a partition in which the plaintiff asserts title to an undivided one-half interest in a tract of land located in Claiborne Parish, Louisiana, which interest is alleged to have vested in plaintiff by virtue of her rights under the community of acquets and gains which existed between her and Almer L. Washington, plaintiff's divorced husband, now deceased.
The defendant claims ownership of the entire interest in the property by reason of his purchase at execution sale held under authority of a writ of fieri facias.
The pertinent facts, which are undisputed or established beyond question, are as follows:
Almer L. Washington acquired the property in dispute during his marriage with plaintiff. On June 30, 1924, judgment was rendered against A.L. Washington in the sum of $112.75 in favor of Lindsey Mercantile Company, Inc., which judgment was duly recorded. By instrument dated June 14, 1934, Lindsey Mercantile Company assigned said judgment, for value, to C.V. Palmer, defendant herein, and on June 22, 1934, Palmer filed a petition praying for a revival of the said judgment. This suit for revival was directed against A.L. Washington alone, and plaintiff was not made defendant nor cited in the action for revival of the judgment. In this fact is found the crux of this case. Judgment of revival was signed September 10, 1934, and under said revived judgment a writ of fieri facias was sued out, and under execution of said writ the property involved in this case was seized and sold on November 7, 1934, to the defendant, C.V. Palmer, who has been in possession thereof since said date.
On February 6, 1931, in an action by A.L. Washington against his wife, Georgia Washington, judgment of divorce was rendered, forever dissolving the marriage theretofore existing between said parties. At the time of the judgment of divorce this plaintiff, Georgia Washington, was residing *Page 511 
in the City of Chicago, Illinois, which has continued to be her home, and consequently, she is a nonresident of the State of Louisiana.
An exception to the form of plaintiff's action was filed on behalf of defendant, based upon the contention that plaintiff sought to substitute an action in partition for a petitory action. This exception, in the alternative, further objected to plaintiff's petition on the ground that the same failed to disclose a cause or right of action, and, further, that plaintiff was without legal interest to assert the claim made. The exceptions were overruled by our learned brother of the district court, who assigned reasons for his action in a well-considered written opinion.
After answer by defendant, the case was tried on the merits, and there was judgment recognizing plaintiff and defendant as owners of an undivided one-half interest each, in and to the property described, and decreeing a partition by licitation of the said property between plaintiff and defendant. There was further judgment recognizing the claim of the defendant, Palmer, to a sum, fixed at $300, representing the value of improvements made by him on the property, and decreeing that said sum be paid out of the proceeds of the partition sale before division of the mass. Costs of suit were taxed against the defendant, and it was ordered that costs of the partition be borne by the mass.
In passing, it is noted that the Shell Oil Company was originally made a party defendant, but, after proper motion, an order was entered dismissing the suit as to said company.
Motions for rehearing were filed by both plaintiff and defendant and overruled by the Court, whereupon defendant brought this appeal, which has been answered by plaintiff, who prays for a reduction of the amount allowed defendant as the value of improvements.
[1] It is necessary for us, first, to consider the exceptions filed by defendant, for although counsel for defendant devoted only brief 'attention to said exceptions in his oral and written arguments before this Court, we cannot consider them as having been abandoned, inasmuch as counsel asserts in brief that they are submitted for the attention of this Court.
[2] As was pointed out by the district Judge in his very excellent written opinion, every action for a partition partakes in some degree of the nature of a petitory action, inasmuch as the Court is called upon to adjudge the ownership of the property in question between the plaintiff and defendant, and to fix their respective interests therein in order to determine the right to a partition.
[3-5] It appears to us to be settled beyond any further question that a party alleging the ownership of an undivided interest in lands is entitled to proceed by an action of partition as a matter of right. A defense of lack of interest on the part of a plaintiff may, of course, always be set up by a defendant, but such a defense should not in itself relegate a plaintiff to the petitory action when the same purpose can as well and as expeditiously be accomplished through a proceeding for partition. Certainly, there is nothing in a demand for a partition which is inconsistent with the claim of title. On the contrary, the allegation of ownership of an interest is fundamental and essential to an action of partition. It has been often held that the question of title may be put at issue in a suit for partition. This holding is clearly expressed in Durbridge v. Crawley, 43 La. Ann. 504, 9 So: 95, which further holds that there is nothing improper in the cumulation of petitory and partition actions.
[6] An essential of the partition action, as we have stated, is the establishment on the part of plaintiff that he is co-owner with the defendant. Continental Securities Corporation v. Wetherbee, 187 La. 773, 175 So. 571.
[7] In our opinion, the provision of Article 43 of the Code of Practice and the case of Duffourc et al. v. Constantin,189 La. 826, 181 So. 183, cited by defendant's counsel in brief, are not applicable to the point raised by this exception, and the exception as to the form of the action was properly overruled. *Page 512 
The alternative exceptions of no cause or right of action and want of interest appear to be predicated upon the contention that plaintiff was divested of any right or claim to the property through the conveyance, evidenced by the sheriff's deed, on execution of the writ of fieri facias, to the defendant, Palmer, of the full title to said property. Since the basis of these exceptions is unquestionably dependent upon the merits of the case, and is disposed of by whatever judgment may be rendered on the merits, we see no merit in discussing the same proposition at this point. For this reason, we proceed with a consideration of the question which is admittedly the main issue for determination, viz.:
Does a judgment of divorce, which dissolves the community theretofore existing between husband and wife, have the effect of making the wife a necessary party to a suit to revive a judgment originally rendered against the husband, and recorded as a judicial mortgage against the property of the community?
The corollary to this question of necessity poses a further proposition as to the binding effect, upon the interest of a divorced wife, of an execution sale against community property under the authority of a judgment revived contradictorily with the divorced husband alone.
Distinguished counsel for defendant in his very thorough and impressive brief, as well as in the earnest presentation of his oral argument, has cited numerous authorities in support of defendant's position. Generally stated, the principal defense in this case rests upon the contention that the spouses have only a residuary interest in the property of the community at its dissolution, which attaches only after payment of the community debts.
[8-15] We think it desirable to clarify the question which we have above propounded by making certain statements of well-established legal principles bearing upon the liability of the community for debts and the interest of husband and wife therein. Counsel for plaintiff, in brief, has made certain concessions and admissions which fall in line with our intention to restrict the question of law which is the focal issue of this case. To this end we hold that the following principles are fixed and established by the jurisprudence of this State:
(1) The husband is the head and master of the community, as such responsible for its debts, and the death of the wife does not deprive him of the right to make settlements for the payment of the debts of the community. Rusk, Administrator, v. Warren, Crawford, et al., 25 La. Ann. 314.
(2) The community property is liable for the community debts. Killelea v. Barrett, 37 La. Ann. 865.
(3) The debts of the community must be paid out of its assets and the surviving wife is entitled only to one-half of that which remains after their payment. Depas v. Riez, Executrix, 2 La. Ann. 30.
(4) An executor or administrator is authorized to sell community property for the payment of community debts. Succession of McLean, 12 La. Ann. 222.
(5) A judgment creditor of a surviving spouse may seize and sell an asset of the community in satisfaction of his demand. Baird et al. v. Lemee, 23 La. Ann. 424.
(6) The payment of a mortgage debt may be enforced against the community property without the necessity of making the succession or heirs of the deceased spouse a party to such proceeding. Killelea v. Barrett, 37 La. Ann. 865.
(7) The community of acquets and gains, after the demise of one of its members, has a fictitious existence for the purpose of liquidation and settlement of community debts. Succession of Dumestre, 42 La. Ann. 411, 7 So. 624; Succession of Hooke, 46 La. Ann. 353, 15 So. 150, 23 L. R.A. 803; Newman v. Cooper, 46 La. Ann. 1485, 16 So. 48.
(8) A creditor of the community, whose debt is secured by a special mortgage evidenced by an authentic act importing a confession of judgment and containing the nonalienation clause, may foreclose the mortgaged property in executory proceedings directed against the surviving husband alone. Landreaux v. Louque, 43 La. Ann. 234, 9 So. 32. *Page 513 
We think a great deal of confusion in the consideration of this case may be avoided by emphasizing the fact that the above rules of law, enunciated and supported by the cited cases, without exception resulted from a consideration of issues arising from the dissolution of the community of acquets and gains effected by the death of one of the spouses.
The conclusion which must inescapably be drawn from the burden of the argument advanced on behalf of defendant would be to the effect that the same situation exists under the law whether the community be dissolved by death of one, of the spouses or by divorce.
In the first place, there is every reason why the fiction of a continuing community and the responsibility of the surviving partner therein should be preserved in the event of the demise of the other partner. The obvious reasons why this should be so are set forth in the many cases dealing with this particular point which have been cited supra. Therefore, we do not feel it necessary to dwell at length on this question, particularly since we propose to occupy the major portion of this opinion by pointing out the distinction between dissolution by death and by divorce.
[16] It is settled that after the dissolution of the community by divorce or separation the husband and wife become co-owners in indivision of the community property. Giglio v. Giglio, 159 La. 46, 105 So. 95; Rhodes v. Rhodes, 190 La. 370,182 So. 541; In re F. H. Koretke Brass Mfg. Co., Ltd.,195 La. 415, 196 So. 917; Butler v. Bolinger et al., 16 La. App. 397, 133 So. 779, 782.
In the case last above cited, Judge Drew, as the organ of this Court, phrased the effect of such a dissolution in the following language:
"After the dissolution, husband and wife are tenants in common or joint owners of the property located in Louisiana, and the wife has the legal right to sell her undivided one-half of the property, as was done in this case."
[17] The right of a divorced wife to proceed against her divorced husband for a partition is specifically sustained in the case of Giglio v. Giglio, supra, which principle was reiterated in Rhodes v. Rhodes, supra.
The well-known case of Tomme v. Tomme, 174 La. 123,139 So. 901, 903, has been cited by learned counsel for defendant in support of his position in this case. We are unable to find such an analogy between the Tomme case and the case at bar, nor do we consider the controlling principle of law as enunciated in the Tomme case applicable to the question here before us. The demand by the divorced wife against her former husband, in the Tomme case, sought a money judgment for the alleged value of one-half interest in the community. In pointing the holding of the court, on the issue raised by the exception of no cause or right of action, the opinion of Justice Odom called attention to the fact that there was no allegation by plaintiff as to the liquidation of the community, nor any demand for its liquidation, nor for a partition or settlement by a suit for the value of one-half interest in the property. The rights of the spouses were particularly emphasized in the opinion as follows:
"When the community is dissolved by judgment as in this case, the spouses each get, not half the value of the effects, but each a one-half interest in the effects themselves, which may be divided, partitioned, and it is settled jurisprudence that where the former husband remains in possession of the community property, the wife or her heirs may sue for her share of the property before the community has been liquidated and without alleging that it is insolvent. Tugwell v. Tugwell, supra [32 La. Ann. 848]; Glasscock v. Clark, 33 La. Ann. 584; Heirs of Murphy v. Jurey Gillis, 39 La. Ann. 785, 2 So. 575; Succession of Dumestre, 42 La. Ann. 411, 7 So. 624; Verrier v. Loris, 48 La. Ann. 717, 19 So. 677; Levy et al. v. Robson,112 La. 398, 36 So. 472."
Contrary to the contention of counsel for defendant, in our opinion the judgment of the Supreme Court in the Tomme case is convincing as to the distinction between the dissolution of a community by death and by divorce. *Page 514 
In the instant case, the facts established by the record are themselves eloquent in presenting the reason for the distinction. It must be borne in mind that this is not a case in which a creditor seeks to reduce a claim upon a community obligation to judgment, nor to procure execution of an existing judgment against the property of the community. The judgment had been obtained, and properly, in an action against the husband during the existence of the community, and the recorded judgment constituted a judicial mortgage upon the community property. But, subsequent to the rendition and recordation of the judgment, the community was dissolved by a decree of divorce.
This judgment of divorce changed the status of property held in the name of the husband and changed the relationship of the parties to one another, as well as to the property. Instead of owners in community the husband and wife became tenants in common, joint owners in indivision; their respective interest, of course, being subject to community debts, and the status of the husband changed from that of head and master of the community to one of an owner of an undivided interest. Similarly, the status of the wife was effected. No longer was she obligated by marital ties to subservience to her husband, as head of the community, in his administration of affairs involving community property, but, on the contrary, she became clothed with the new dignity of joint ownership. The administration of her undivided interest in the property, from the moment of the judgment of divorce dissolving the community, devolved upon her individually.
[18] Under the circumstances related there was no need, nor, indeed, was there any reason, for preserving the fiction of a community and of the agency of the husband as the head of such community since the wife had become answerable, in her individual capacity as a joint owner, to the extent of her ownership. For this reason, as we view the question, the revival of a judgment, regardless of its inception as a community obligation, could not be affected by proceedings solely against one of the spouses.
The proceedings with respect to the revival of judgments, as embodied in Article 3547 of the Civil Code, are definite and detailed. The article reads as follows:
"All judgments for money, whether rendered within or without the state, shall be prescribed by the lapse of ten years from the rendition of such judgments, * * *. Provided, however, that any party interested in any judgment may have the same revived at any time before it is prescribed, by having a citation issued according to law, to the defendant or hisrepresentative, from the court which rendered the judgment, unless defendant or his representative show good cause why the judgment should not be revived, and if such defendant be absentand not represented, the court may appoint a curator ad hoc to represent him in the proceedings, upon which curator ad hoc the citation shall be served.
"Any judgment revived, as above provided, shall continue in full force for ten years from the date of the order of court reviving the same, and any judgment may be revived as often as the party or parties interested may desire."
(Emphasis by the Court)
We deem the provisions of the article which we have above emphasized as being particularly significant. After the divorce the husband was no longer the sole defendant, nor was he an authorized representative of the wife. The two who became joined as one in the eyes of God and the law, through the performance of the marriage ceremony, were now again become two, through the severance effected by the judgment of divorce.
In this case, the wife was a non-resident and, as a matter of fact, she was not even cognizant of the divorce proceeding until sometime after the rendition of the judgment. The fact of her non-residence is a contingency wisely recognized and provided against in the codal article above quoted, which specifically requires the appointment of a curator ad hoc and service upon him as the representative of an absent defendant.
While we find no jurisprudence in this State bearing upon the revival of judgments, *Page 515 
which would be directly applicable, we are impressed with the similarity of the situation which exists in the present case and in those cases involving service upon one member of a dissolved partnership. In the case of Mitchell Rammelsburg Furniture Co. v. Sampson, C.C., 45 F. 111, 114, the conclusions of the Court were stated in the opinion as follows:
"Considering the foregoing facts, we are of the opinion that judgment should be for the defendant, dismissing the plaintiff's demand, with costs. The judgment obtained in the sixth district court of the parish of Orleans, state of Louisiana, against the firm of Sampson Bros. and Frank G. Sampson and Chandler Sampson in solido, having been rendered upon an appearance for them by a reputable counsel, was a valid and binding judgment, and so remained under the laws of Louisiana for 10 years following its rendition. The proceedings of the civil district court in 1885, hereinbefore recited, to revive the said judgment, as provided for by article 3547 of the Civil Code of Louisiana, were of no force and effect against the defendant Frank G. Sampson, because no legal citation was issued and served upon him, nor upon any legal representative of his, as required by the law of Louisiana. On the dissolution of the firm of Sampson Bros., the closing of their business place, and the removal of the partners from the state, the said firm ceased to exist, and the citation issued and directed to the firm of Sampson Bros., and the appointment of a curator ad hoc for said Sampson Bros., if of any effect, had no binding force upon the individuals who had formerly composed the said firm. Gaiennie v. Akin's Ex'r, 17 La. 42, 36 Am.Dec. 604; Hefferman v. Brenham, 1 La. Ann. 146; McCloskey v. Wingfield, 29 La. Ann. 141."
In our opinion, every consideration of equity bears out the conclusion which we have reached on the basis of our interpretation of existing jurisprudence and the development of the reasons upon which we believe such jurisprudence to be predicated.
As we have above stated, the disposition of this matter upon consideration of the merits, also answers the issues raised in the exceptions of no cause or right of action and want of interest.
[19] The only other issue in the case involves the matter of the allowance to the defendant of the value of improvements. We have carefully examined the record bearing upon this point. In our opinion, this is purely a factual issue, and since we find no manifest error in the conclusion reached by the trial judge, we are not justified in disturbing this portion of his judgment.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.